40207. SUN INSURANCE OFFICE, LTD. et al. v. GUEST CAMERA STORE, INC. et al.

Decided September 4, 1963—
Rehearing denied September 19, 1963.

*Erwin, Birchmore & Epting, Howell C. Erwin, Jr.,* for plaintiffs in error.

*Joseph J. Gaines,* contra.

BELL, Judge. ■ Although the separate cases here, consolidated by agreement of all parties for the purpose of trial in the court below, have been brought to this court by a single bill of exceptions, it was decided in *Scales v. Peevy,* 103 Ga. App. 42 (1b) (118 SE2d 193), that this court has jurisdiction. The *Scales* case on this point has been followed in *Columbus Plumbing, Heating &c. Co. v. Home Fed. Sav. &c. Assn.,* 104 Ga. App. 36, 39 (1) (121 SE2d 62), and in *Turner v. Maryland Cas. Co.,* 104 Ga. App. 693, 694 (1) (122 SE2d 479).

■ The defendants demurred to paragraph 8 of the petitions which alleged in substance that the wind blew a large tile wall

cap weighing approximately 50 pounds with such force as to cause it to strike the roof of the building housing the insured contents and to break a hole through the roof permitting water to enter the building. The demurrer is based on the argument that the allegations concerning the cause of damage are insufficient to bring the occurrence within the coverage of the policy for the reason that they show that the tile cap, and not the wind, broke the hole in the roof through which the rain entered and therefore that "the hole was not caused by the direct force of wind or hail."

In the same vein, in the sole special ground of their motions for new trial the defendants contend that the trial court erred in its charge defining a windstorm as follows: "I charge you that the term 'windstorm' is defined as a wind of sufficient violence to be capable of damage to the insured property, either by its own unaided action or by projecting some object against it." They assert that the instruction misled the jury into believing that the policies covered losses caused by rain entering the building through holes in the roof occasioned by heavy tile being blown against the roof.

The defendants' theory in both their demurrer and their special ground is that these holes would be ones caused by the *indirect* rather than the *direct* action of the wind and that any loss occasioned by indirect action of the wind is expressly excluded from the extended coverage afforded by the fire insurance policies. This court must determine, therefore, whether the pleading and the charge complained of are proper when viewed with the limiting language of the relevant exclusionary terms of the extended coverage provisions of the insurance policy. The material portion of the provision is:

"This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by rain, . . . . , whether driven by wind or not, unless the building . . . containing the property covered shall first sustain an *actual damage* to roof or walls *by the direct force of wind* . . . and then *shall be liable for loss* to the . . . property covered therein as may be *caused by rain* . . . *entering the building through openings* in the roof or walls *made by direct action of wind* . . . ." (Emphasis added.)

As we construe this qualification, the insurance company is not liable for rain damage other than that resulting from rain which enters through openings in the roof or walls of the building made by the direct action of wind. The policy contains no definition of wind or windstorm, and no provision excluding losses caused by the force of the wind projecting hard objects against the roof or walls of the building.

The definition of a windstorm as expressed in the trial judge's charge was apparently taken from that first stated in a Georgia decision in Chief Judge Felton's special concurring opinion in *McClelland v. Northwestern Fire &c. Ins. Co.*, 91 Ga. App. 640, 643 (86 SE2d 729). The *McClelland* case involved damages to plaintiff's automobile alleged to have been sustained as a result of a windstorm. Among the authorities cited by Chief Judge Felton in support of the definition he favored was Gerhard v. Travelers Fire Ins. Co., 246 Wis. 625 (18 NW2d 336, 337), where the issue was quite similar to the question here. The Wisconsin case involved a policy insuring against the perils of windstorm and excepting water damage unless the building first sustained actual damage by direct force of the wind. The extended coverage provision there in issue is almost identical with the one before us. The facts there showed that the cottage was damaged when ice was blown across the lake against it. The insurance company contended that the damage was not caused by direct force of the wind. The Wisconsin Supreme Court held that this contention was without merit and said: "In the absence of definition or limitation in the policy, we think that a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it . . . While the policy expressly excludes from coverage situations where the damage is caused by water unless the wind shall first have breached the walls of the building, that does not mean that hard objects projected against the building by the immediate force of the wind can be eliminated from the policy. They were not expressly limited, and under all tests known to the law constitute damage done by direct action of the wind."

In *Travelers Indem. Co. v. Wilkes County*, 102 Ga. App. 362,

363 (116 SE2d 314), which involved only wind damage to an insured building, Chief Judge Felton again defined a windstorm, this time in a full division opinion, in the same terms used in the *McClelland* decision and in the language used in essence by the trial judge in the charge of which complaint is made in the present case. In the *Wilkes County* case the court also quoted with approval the statement found in 29A Am. Jur. 445, Insurance, § 1329. "In the absence of a specific provision in the policy to the contrary, it is generally sufficient, in order to recover upon a cyclone, tornado, or windstorm policy, to show that the cause designated therein was the efficient cause of the loss, although other causes contributed thereto."

The case of *Atlas Assurance Co. v. Lies*, 70 Ga. App. 162 (27 SE2d 791) (only a two-judge decision with one dissent, but one where certiorari to the Supreme Court was sought but denied), involved a suit on a policy of automobile insurance for damages to an automobile allegedly caused during a windstorm by a tree falling and striking the automobile while it was traveling on a public highway. In affirming the verdict and judgment for the insured the court found the evidence sufficient to authorize the jury to find that the wind blew the tree down in such a manner as to be the primary cause of the damage to plaintiff's automobile, and thus, as a matter of law, brought the damage within the coverage of the windstorm provisions of the insurance policy "as damage caused directly by . . . windstorm."

As we construe these precedents of our court, it is the law of this State that where, as here, a building containing property insured against damage by windstorm has its roof opened either by the wind lifting the roof or by the wind projecting some object against the roof, so as to permit the entry of rain which damages the property, the resulting damage is caused by the direct force of the wind and comes within the coverage of the policy.

The court correctly overruled the defendants' special demurrers to paragraphs 8 of the petitions. The court did not err in denying the motions for new trial as based on the single special ground of each of the motions.

■ The general grounds of the motions for a new trial ques-

tion the sufficiency of the evidence to support the verdicts of the jury rendered for the plaintiffs.

First, we consider whether the wind was high enough to have blown the piece of tile onto the roof. The Weather Bureau records showed that the wind velocity was no greater than 22 miles per hour on August 1, 1961. The evidence does not show, however, that the station was in the immediate vicinity of the damaged property, while one witness who was nearby testified that the wind was very high, up to 75 miles per hour. Another witness who was in the building at the time testified, "The wind was blowing to such an extent that the metal roof on the top of the building was making tremendous noise. The roof sounded like cymbals, hitting together, making a metal sound." Under these circumstances we cannot say that the verdict of the jury is unsupported by any evidence of windstorm. *Atlas Assurance Co. v. Lies*, 70 Ga. App. 162, 165, supra.

A similar situation arose in Trexler Lumber Co. v. Allemannia Fire Ins. Co. of Pittsburgh, 289 Pa. 13 (136 A 856) (1927), which also was concerned with a policy insuring against direct damage caused by windstorm. Here, the evidence for the defense, including that of weather reports and weather observers, tended strongly to disprove plaintiff's contention, but the court held that the credibility of the evidence was for the jury.

In Pearl Assur. Co. v. Stacey Bros. Gas Const. Co., 114 F2d 702 (6th Cir. 1940), the two questions were whether there was substantial evidence of the occurrence of a windstorm and, if so, whether there was material evidence that the windstorm proximately caused appellee's loss. The evidence included anemometer readings of winds not in excess of 21 miles per hour taken at airports ten miles to the northeast and southeast of the damaged property. Appellee introduced testimony of four witnesses who were at the site when the damage occurred. Theirs was the only direct evidence as to the wind conditions at that time. They testified that the winds were "of unusual velocity," estimated at from 45 to 60 miles per hour with gusts up to 60 or 75 miles per hour. The court held that "testimony of those who were at the gasholder was both direct and substantial, and the evaluation of their testimony, as well as contradictory testimony, was for the jury."

Second, the defendants' expert witness stated that only 12 gallons of water could have entered the holes in the roof allegedly caused by the blow of the tile, while the water damage must have been caused by several hundred gallons of water. The defendants' expert witness also testified, however, that over 1,800 gallons of water fell on one half of the roof during the storm on the evening of August 1, 1961.

One of plaintiffs' witnesses who was in the building at the time testified that "the deluge came approximately in the middle of the main building . . . it was raining all over the building—raining from the ceiling . . . this was true throughout the 100 ft. portion of the building . . . it would be hundreds of gallons of water that came down on the first floor that night." Although the testimony as to the means through which the water entered the building was conflicting, there is in the record evidence of one witness to the effect that the wind was blowing to such an extent that the metal roof on the top of the building was making a tremendous noise which sounded like cymbals hitting together making a metal sound; and that of another witness who testified: "In my opinion I say that the wind was of sufficient velocity that night to have raised that tin where water could have gotten under it. That night wind was under that roof because I had never heard that roof sound like that before, and it was just flapping like a sheet on a line, and it is my opinion water went under that roof by the wind and let a lot of water down." This evidence was sufficient to authorize the jury to find, as they obviously did, that the water damaging the property entered mainly through the holes in the roof or under the roof driven by the wind.

Finally, the defendants attempted to explain the water damage by showing that it was probably caused by an overflow of rain water in the gutters because the downspouts were clogged by pigeon feathers and droppings caught in a wire trap in the downspout. A witness for plaintiffs testified that he looked at the downspout during the storm and that it was discharging water at full capacity and another of plaintiffs' witnesses testified that he examined the wire trap soon after the rain stopped and found only negligible amounts of pigeon refuse. Defendants' witnesses

who examined the premises some days after the storm testified that they found up to six inches of refuse in the wire trap, thereby presenting at best merely another conflict in the evidence for the jury to resolve.

The evidence supported the verdict.

The trial judge did not err in overruling defendants' motions for new trial on the general grounds nor in denying their motions for judgment notwithstanding the verdict.

The exceptions brought to the overruling of the defendants' second demurrer were abandoned.

*Judgment affirmed. Carlisle, P. J., and Hall, J., concur.*