A98A1205. HOLMES et al. v. CHATHAM AREA TRANSIT AUTHORITY et al.
(505 SE2d 225)

BLACKBURN, Judge.
Brenda Holmes, as executrix of the estate of Albert Leroy Holmes, Jr., and Albert Holmes appeal the trial court's order dismissing their suit against the Chatham Area Transit Authority (CATA) on the ground they failed to give the State of Georgia proper ante-litem notice under the Georgia Tort Claims Act (the Act). Because CATA, as local government authority, is expressly excluded from the Act, we hold that the trial court erred in dismissing the suit on this basis and reverse.

On April 5, 1995, Albert Holmes, Jr., was hit by a car shortly after exiting a CATA bus. He died as a result of his injuries. On March 24, 1997, the appellants brought a wrongful death action against the bus driver and CATA. CATA answered, asserting the appellants' failure to comply with the ante-litem notice requirements of the Georgia Tort Claims Act, OCGA § 50-21-26. Appellants petitioned the trial court for a ruling that CATA was a local authority.

CATA responded, arguing that it was a state authority, and moved the court to dismiss the complaint based upon the appellants' failure to provide the required notice. The trial court found that CATA was an "instrumentality of the state" and therefore subject to the Tort Claims Act. Consequently, the trial court dismissed the complaint upon finding that the appellants failed to give timely ante-litem notice.

The Act, including its ante-litem notice provisions, applies in this case only if CATA is deemed to be a creature of the State within the meaning of the Act. *Miller v. Ga. Ports Auth.*, 266 Ga. 586 (470 SE2d 426) (1996). "By its express terms, the [A]ct clarifies that the 'State' includes state authorities and instrumentalities, but not local governmental entities, for purposes of waiving sovereign immunity." Id. at 588; *Crisp County School System v. Brown*, 226 Ga. App. 800, 801 (1) (487 SE2d 512) (1997). The Act defines a "state government entity" as a "state office, agency, authority, department, commission, board, division, instrumentality, or institution." OCGA § 50-21-22 (6). "State" is defined to exclude "counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities." OCGA § 50-21-22 (5). Thus, the dispositive question before us is whether CATA is a state or a local government entity.

To resolve this issue, it is necessary first to examine the legislation creating CATA. CATA was created in 1986 by local legislation, Act No. 1298 (House Bill 1699). Ga. L. 1986, p. 5082. This local act provided that "[t]here is created a body corporate and politic to be known as the Chatham Area Transit Authority, which shall be deemed to be an instrumentality of the State of Georgia and a public corporation." Id. at 5085, § 2.1. CATA was authorized to operate "a transit system for the purpose of transporting persons inside and outside of Chatham County." Id. at 5089, § 3.1 (5). The local act also provided that CATA "shall have sovereign immunity" except to the extent waived by liability insurance. Id. at 5092, § 3.4. CATA's membership is comprised of the members of the Board of Commissioners of Chatham County and three local citizens. Id. at 5085, § 2.2. Further, CATA is authorized to issue revenue bonds "in the same manner and to the same extent as counties and municipalities of this state." Id. at 5092, § 4.1. Any indebtedness incurred by CATA in issuing its revenue bonds is not to be considered an obligation of the State. Id. at 5095, § 4.11. CATA is audited by the external auditor of Chatham County or a certified public accountant chosen by the authority. Id. at 5088, § 2.4.

CATA is registered with the Georgia Department of Community Affairs pursuant to OCGA § 36-80-16 as a "local authority." CATA stated in its responses to interrogatories that none of its employees

were members of the State Merit System. CATA also admitted it was not subject to any control or supervision by the State of Georgia. Further, no claim brought against CATA has ever been turned over to the Director of Administrative Services, processed under the State Tort Claims Act, or paid from the Trust Fund created for purposes of the Act.

Despite these numerous indications that CATA is a local authority, the trial court determined that CATA was a state governmental entity to which the Act applied solely because the local act which created CATA stated that it shall be deemed "an instrumentality of the State of Georgia." For the reasons which follow, we disagree with the trial court's interpretation of this language.

It is axiomatic that if an enactment is plain and unambiguous, we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. OCGA § 1-3-1 (b). We must seek "to give meaning to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage." *Moritz v. Orkin Exterm. Co.*, 215 Ga. App. 255, 256-257 (450 SE2d 233) (1994). " '[A] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.' " *Bennett v. Wood*, 188 Ga. App. 630, 632 (1) (373 SE2d 645) (1988). Finally, "[i]t is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." (Punctuation omitted.) *Gilbert v. Richardson*, 264 Ga. 744, 747-748 (3) (452 SE2d 476) (1994).

In this case, the phrase "instrumentality of the state" is not subject to simple definition. Rather, it is a term whose meaning has changed and evolved over time and which has been used in many contexts. An "instrumentality," at its most fundamental, is a tool. It is a device — a "means or an agency," according to the Random House Dictionary — which enables an individual or a government to achieve an end. Typically, state and local authorities and public corporations which were created to serve public purposes, but which did not fall within the traditional definition of a political subdivision of the state, were referred to as instrumentalities. E.g., *Miller*, supra (Georgia Ports Authority); *Fulton-DeKalb Hosp. Auth. v. Gaither*, 241 Ga. 572 (247 SE2d 89) (1978) (local hospital authorities); *Smith v. State of Ga.*, 217 Ga. 94 (121 SE2d 113) (1961) (Waycross and Ware County Development Authority); *Tippins v. Cobb County Parking Auth.*, 213 Ga. 685 (100 SE2d 893) (1957) (local parking authority);

*Culbreth v. Southwest Ga. &c. Housing Auth.*, 199 Ga. 183 (33 SE2d 684) (1945) (local housing authorities). However, counties, which are clearly political subdivisions of the state, have also been referred to as instrumentalities of the state. See *Wojcik v. State*, 260 Ga. 260, 262 (392 SE2d 525) (1990).

In many opinions, this Court and the Supreme Court of Georgia have held that if the authority or public corporation was deemed to be an instrumentality of the state, it enjoyed many of the benefits ordinarily reserved to a political subdivision of the state. For example, because the Southwest Georgia Housing Authority was deemed an instrumentality of the state, its property was "exempt from taxation to the same extent as if the legal title thereto was in the State itself or in a county or city." *Culbreth*, supra at 189. Also, local authorities, by asserting their status as instrumentalities to which public duties had been delegated, have challenged the courts to determine whether they were entitled to claim sovereign immunity (compare *Thomas v. Hosp. Auth. of Clarke County*, 264 Ga. 40, 41 (440 SE2d 195) (1994) with *Hosp. Auth. of Fulton County v. Litterilla*, 199 Ga. App. 345 (404 SE2d 796) (1991) rev'd at 262 Ga. 34 (413 SE2d 718) (1992)) or whether they should be afforded the status of a state employer under the then existing workers' compensation laws (see *Fulton-DeKalb Hosp. Auth. v. Gaither*, 241 Ga. 572 (247 SE2d 89) (1978)).

Based upon our review of these cases, we find that in 1986 when the local legislation creating CATA was passed, the phrase "instrumentality of the state" was *not* used to indicate that CATA was a political subdivision of the State of Georgia. Rather, the phrase was loosely used to mean that CATA was a public entity entitled to claim many of the benefits typically reserved to counties and state agencies and other recognized political subdivisions of the state. The use of this language, therefore, does not transform what is by all indications a *local* authority into a *state* governmental entity.

Although the trial court relied on *Miller*, supra, in reaching its conclusion that CATA was a state governmental entity, the holding in that case does not change our analysis. The Supreme Court's analysis in *Miller* was premised on an assumption that the Georgia Ports Authority was an instrumentality of the state created to carry out state functions. The issue was whether a state "instrumentality" was a state governmental entity which could claim the defense of sovereign immunity. If it was such an entity, then the provisions of the Act applied to it. The Supreme Court looked to the broad definition of "State" contained in the Act to determine that the Georgia Ports Authority, though called an "instrumentality," was such a state government entity: "Our earlier cases distinguishing between instrumentalities of the state and state agencies are not dispositive since

both instrumentalities and agencies are included in the [A]ct's definition of the state. . . . In determining the state departments and agencies that are entitled to sovereign immunity, this Court has never restricted the defense or its waiver to entities with the words 'department' or 'agency' in their title. Instead, we have held that the terms apply to state political subdivisions and governmental entities, including the Board of Regents of the University System of Georgia and counties." (Footnotes omitted.) *Miller*, supra at 588-589.

CATA, though called an "instrumentality" is unlike the Georgia Ports Authority in that it serves local rather than state interests. It was created by local legislation to satisfy local public transportation needs. It is governed, audited, and funded locally. Consequently, it appears to be a creature of local government.

Because we find that CATA is a local authority specifically excluded from the act's definition of "state government entity," OCGA § 50-21-22, we hold that the appellants were not required to give it ante-litem notice of their claim under OCGA § 50-21-26. The trial court, therefore, erred in dismissing the appellants' complaint on this basis.

*Judgment reversed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED JULY 30, 1998 —
RECONSIDERATION DENIED AUGUST 20, 1998.

*Robert P. Phillips III*, for appellants.
*Kent, Worsham & Smart, A. Martin Kent, Joseph Y. Yahimi II*, for appellees.