### In re APPONLINE.COM, INC., et al., Debtors.

### Prudential Securities Credit Corp., LLC, Plaintiff,

### v.

### Stewart Title Guaranty Company, Mortgage.com, Inc., d/b/a Online Capital, Don DeFoor, Esq., Kelly J. Carruth, Pamela Carruth and Larry Q. Koon, Defendants. ˙

### Bankruptcy Nos. 800–84686–478, 800–84687–478, 800–85007–478, 800–45195–478 to 801–45202–478. Adversary No. 801–8366–478.

United States Bankruptcy Court, E.D. New York.

Oct. 15, 2002.

Thacher Proffitt & Wood, by Jean E. Burke, John P. Doherty, White Plains, NY, for Plaintiff.

White Fleischner & Fino, LLP, by Gil M. Coogler, New York City, for Defendant.

Herrick Feinstein LLP, by Paul Rubin, New York City, for Defendants Stewart Title Guaranty Company, Mortgage.com, Inc. d/b/a Online Capital, Kelly J. Carruth, Pamela Carruth & Larry Q. Coon.

Kramer Levin Naftalis & Frankel, LLP, by P. Bradley O'Neill, New York City, for Alan Jacobs.

## MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court is a motion by the plaintiff, Prudential Securities Credit Corp., LLC ("Prudential" or "Plaintiff"), seeking partial summary judgment against defendant Don DeFoor, Esq. ("DeFoor" or "Defendant") on the grounds of negligence *per se* based on alleged violation of the Georgia "Good Funds" statute, *see* Ga. Code Ann. 44–14–13(c). Also pending is a cross-motion for summary judgment by defendant DeFoor seeking dismissal of Plaintiff's complaint. The Court heard oral arguments for both sides on this motion on June 11, 2002 and the Court granted both parties permission to submit additional papers on or before June 21, 2002. The Court has considered thoroughly all submissions, evidence, and arguments relating to this matter, and the decision rendered herein reflects such consideration. The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FACTS

Island Mortgage Network, Inc. ("Island Mortgage") is a mortgage broker that originated mortgage loans and was regularly engaged in the sale of notes and mortgages in the secondary mortgage market. National Settlement Services, Inc. ("National Settlement") assisted Island Mortgage in the settlement process of mortgage closings. National Settlement is a Delaware Corporation which is a wholly-owned subsidiary of Action Abstract, Inc. ("Action Abstract"). Action Abstract is a New York Corporation, and is wholly owned by Robert Knickman, a director of AppOnline.com ("AppOnline"), one of the Debtors in this Court. National Settlement's registered office is at 1209 Orange Street, Wilmington, Delaware. As of June 8, 2000, National Settlement was not registered to do business with the Secretary of State of Georgia. As of June 8, 2000, Island Mortgage was a lender approved by the United States Department of Housing and Urban Development ("HUD"), and was authorized to conduct business in the state of Georgia.

In June 2000, Kelly Carruth, Pamela Carruth and Larry Koon ("Borrowers"), took out a loan to be funded by Island Mortgage ("Carruth–Koon Loan") in the amount of $98,853 in connection with a real estate transaction involving the purchase of a parcel of property located at 34 Fortuna Court, Douglasville, Georgia ("Property"). Defendant DeFoor was designated by Island Mortgage as the settlement agent for this loan closing.

On June 6, 2000, National Settlement, on behalf of Island Mortgage, issued an uncertified check payable to DeFoor in the amount of $98,853 to fund the Carruth–Koon Loan (the "June 6th Check"). Two days later, on June 8, 2000, the closing on the purchase of the Property took place. Borrowers made and executed a promissory note ("Note") in the amount of $98,000 secured by a mortgage on the Property in favor of Island Mortgage. Despite receiving the June 6th Check in an amount sufficient to cover the amount of the note and other closing costs two days prior to the closing, DeFoor had not presented the

June 6th Check for payment or deposit as of June 8, 2000.

At the closing, DeFoor disbursed settlement funds on behalf of Island Mortgage and executed a HUD–1 Settlement statement in which he certified that: "[t]he HUD–1 Settlement Statement which I have prepared is a true and accurate account of the funds which were (I) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction." (Exh. 3 to Doherty Affidavit). In addition, Stewart Title Guaranty Company issued a title policy to "Island Mortgage Network, Inc" insuring the mortgage at the closing. Neither the HUD–1 Settlement Statement nor the Note and Mortgage loan package disclosed the fact that Island had not funded the Carruth–Koon Loan. In fact, DeFoor's Settlement Statement provided to HUD is inaccurate. He did not receive funds outside of the closing, and those funds were not the funds that were disbursed by him as part of the settlement of that transaction. They were funds distributed from his escrow account funded by other unknown parties.

Shortly after the Carruth–Koon closing, DeFoor forwarded a "loan package" for the Carruth–Koon Loan to Island Mortgage, which included the original executed Note and Mortgage and the HUD–1 Settlement Statement. On or about June 20, 2000, Plaintiff purchased the Carruth–Koon loan, including, without limitation, the Note and Mortgage the Borrowers had executed.

A careful review of the June 6th Check does not reveal the exact date that DeFoor deposited the check, but it does reflect that the June 6th Check was stamped with the date of June 15, 2000, and June 16, 2000. (Exh. 4 to Doherty Affidavit). The June 6th Check also reveals that it was stamped with the legend "Payment Stopped" and "Do Not Present Again." On June 19, 2000, DeFoor received notice from Island that it had stopped payment on the June 6th Check due to a "funding number mix-up" (see ¶ 6 DeFoor Affidavit). Thereafter, on June 19, 2000, National Settlement issued another uncertified check payable to DeFoor in the amount of $90,853.18 (the "June 19th Check"). The earliest discernable date stamped on the June 19th Check is June 22, 2000. The June 19th Check was also stamped with the legend "Payment Stopped" and "Do Not Present Again." (Exh. 4 to Doherty Affidavit).

Based on a review of the June 6th Check, the Court concludes that it was not deposited by DeFoor until at least seven (7) days after the closing and distribution of funds for the Carruth–Koon Loan.

On October 12, 2001, Prudential commenced this adversary proceeding against Stewart Title Guaranty Company, Mortage.com., Inc., d/b/a Online Capital, Defoor, Kelly Carruth, Pamela Carruth and Larry Koon seeking, *inter alia:* 1) entry of a declaratory judgment that Prudential is the holder in due course of the Carruth–Koon promissory note purchased from Island Mortgage and therefore that Prudential has rights in the note and is entitled to all the proceeds from the note free from any claims the defendants have or will assert; and 2) damages from DeFoor for negligently and/or fraudulently closing the loan that Prudential purchased by closing the loan (and more specifically, disbursing loan proceeds) prior to receiving good funds from the lender.

On April 15, 2002, Prudential filed a Motion for Partial Summary Judgment against DeFoor on the grounds of negligence *per se* as DeFoor's actions at the Carruth–Koon closing were in violation of Ga.Code Ann. 44–14–13(c) (the "Georgia

Good Funds Statute"). On May 4, 2002, DeFoor filed a Cross–Motion for Summary Judgment dismissing Prudential's complaint and submitted a Memorandum of Law in support. On June 4, 2002, Prudential submitted a Reply Memorandum of Law in Support of Motion for Partial Summary Judgment and in Opposition to DeFoor's Cross–Motion for Summary Judgment. On June 7, 2002, DeFoor submitted a Reply Affirmation in Support of its Cross–Motion for Summary Judgment to which Prudential submitted Supplemental Memorandum of Law in Support of its Partial Summary Judgment Motion.

## DISCUSSION

As a preliminary matter, the Court is aware that Prudential has several pending adversary proceedings in which it asserts it is a holder in due course of mortgage notes purchased from Island Mortgage. Some of these adversary proceedings also involve allegations that certain defendants violated "Good Funds" statutes existing in certain states. In addition, other parties have either purchased or financed mortgage notes from Island Mortgage where Island Mortgage has failed to provide the initial funding, and various adversary proceedings are pending in this Court to determine the rights of these parties. Some of these adversary proceedings also involve "Good Funds" statutes existing in various other states. Given that each adversary proceeding pending in this Court involving these issues turn on their own unique set of facts and circumstances, the findings contained in this decision may or may not be binding in any other adversary proceeding unless this Court specifically makes such findings.

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial'." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56 advisory committee's note). The Court "must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgement as a matter of law." *Warren v. Crawford*, 927 F.2d 559, 561 (11th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In the case at bar, as both parties seek summary judgment and as confirmed to the Court at oral argument that there are no disputed issues of material fact, the Court can decide the issues presented as a matter of law.

### DeFoor's Violation of the Georgia Good Funds Statute

At oral argument, DeFoor conceded that he had not deposited the loan proceeds check when he disbursed the proceeds of the Carruth–Koon loan and furthermore did not have "good funds" when he disbursed those proceeds.[1] In defense of his conduct DeFoor argues two points. First, he claims that the Georgia Good Funds statute does not require that he deposit the loan proceeds check before disbursing the proceeds. Second, he argues that he was entitled to two statutory exceptions contained in the Georgia Good Funds Statute that permit the disbursement of funds that are not "collected funds." The Court is thus faced with a matter of statutory construction which is solely a question of law. *See City of Buchanan v. Pope*, 222 Ga.App. 716, 476 S.E.2d 53, 55 (1996) (interpretation of statute is question of law for the court to decide).

---

**1.** "Good funds" or "collected funds" means funds "deposited, finally settled and credited to the settlement agent's escrow account." Ga.Code Ann. 44–14–13(a)(2).

■ The Court will first address whether DeFoor was required to deposit the checks issued by National Settlement on behalf of Island Mortgage in connection with the funding of the Carruth–Koon loan prior to disbursement of settlement funds to Borrowers. It is axiomatic that if a statute is plain and unambiguous, we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. *See Holmes v. Chatham Area Transit Authority,* 234 Ga.App. 42, 44 505 S.E.2d 225, 227 (1998). Furthermore, "in interpreting statutes, courts must look for the intent of the legislature and construe statutes to effectuate that intent." *Dismer v. Luke,* 228 Ga.App. 638, 639, 492 S.E.2d 562 (1997).

The Georgia Good Funds Statute states, in relevant part:

Except as otherwise provided in this Code section, a settlement agent shall not cause a disbursement of settlement proceeds unless such settlement proceeds are collected funds. Notwithstanding that a deposit made by a settlement agent to its escrow account does not constitute collected funds, the settlement agent may cause a disbursement of settlement proceeds from the escrow account *in reliance on such deposit* under any of the following circumstances:

. . . . (2) The deposit is either a check or draft issued by a lender approved by the United States Department of Housing and Urban Development (HUD);

(3) The deposit is a check issued by a lender qualified to do business in Georgia . . .

*See* Ga.Code Ann. 44–14–13(c). (Emphasis added).

■ The Georgia Good Funds Statute was enacted to promote two objectives: 1) to ensure that loan closings would be consummated quickly and efficiently, and 2) to minimize the risk of loan checks being dishonored. Indeed, the need for the statute stemmed from real estate attorneys who, in the frenetic and fast-paced nature of residential closings, often would not wait until deposited loan checks had been cleared and instead disbursed "uncollected" funds from their escrow accounts. *In re Amendment to the Integration Rule, Article XI, Rule 11.02(4),* 467 So.2d 702, 703 (Fla.1985) (Florida also enacted a Good Funds statute similar to Georgia's statute). This conduct was not only regarded as unethical, due to the possibility of disbursing money from the attorney's other clients accounts if the loan checks had not cleared, but also could potentially lead to the situation as in the case at hand, where the attorney had advanced his own funds on behalf of Island Mortgage in anticipation of a loan check that ultimately did not clear, and a resulting dispute over the rights to the mortgage and note that were subsequently sold to an alleged bona fide purchaser. See Cary S. Griffin *Real Estate Closings & Collected Funds–Do They Go Hand in Hand?,* 11 JUN S.C. Law. 41, 43 (2000). The statute primarily aims to minimize dishonor of checks by establishing a general rule that only "collected" funds may be disbursed. However, t-he Georgia Good Funds Statute does contain certain exceptions to this general rule which permit certain "uncollected funds" such as a cashier's check, a check issued by a lender qualified to do business in Georgia, or a check issued by a HUD approved lender, to be disbursed on the theory that these funds, although uncollected, are issued from credit-worthy lenders and have minimal risk of being dishonored. *See Disbursements Upon Deposit of Funds Provisionally Credited To Trust Account,* 1995 WL 917073 (N.C.St.Bar, 1995) (Interpretation of North Carolina statute similar to the Georgia Good Funds

Statute). With an understanding of the legislature's purpose in enacting the Georgia Good Funds Statute, we turn to the wording of the statute.

 It is clear from the plain meaning of the Georgia Good Funds Statute that, at a minimum, the deposit of the loan checks must occur prior to their disbursement. Indeed, we need only look to the tense of the verbs describing the acts of deposit and the disbursement of the loan proceeds. The first part of the sentence under subsection (c) of the statute describes the actual deposit of the settlement funds in the past tense ("made") whereas the funds, which are described as not "being collected funds", are alluded to in the present tense ("does not constitute collected funds") and the remainder of the sentence permits these settlement funds, which are "uncollected", to be disbursed on reliance of the prior deposit. In order for this sentence to have any meaning, the deposit must occur prior to the disbursement of the funds. This approach is also consistent with the general intent of the Georgia Good Funds Statute. The primary purpose of the statute is to minimize the risk of dishonor of loan checks while also accommodating the fast-paced nature of residential closings. By encouraging the deposit of the check at the earliest possible time prior to disbursement, the statute minimizes the risk of check dishonor by reducing the gap in time between disbursement of the settlement funds and the clearing of those funds in the escrow account.

Prudential's arguments advocate adherence to the plain meaning of the Georgia Good Funds Statute. DeFoor, on the other hand, claims that the settlement agent is not required to deposit the loan proceeds prior to the closing. DeFoor argues that subsection (d) of the Georgia Good Funds statute, which requires the lender to deliver the loan funds *at or before* the loan closing, makes it implausible that the settlement agent could deposit the funds simultaneously with the receipt of the funds from the lender at the closing. Indeed, under this reading of the statute, it would seem that if the lender delivered the funds at the closing, the settlement agent would have no other option than to proceed with disbursement of the funds at the closing and then subsequently deposit the loan proceeds check. The statute talks about loan proceeds or funds, not uncertified checks, which are merely a promise to pay. The settlement agent could require the lender to wire transfer the funds or send a bank check, which would avoid any of these issues. DeFoor points to the HUD–1 Settlement Statement, which certifies that the settlement agent has received *or* will be "paid outside closing" funds from the lender and has disbursed or will disburse the funds after the closing, as further indication that the settlement agent is not required to deposit loan proceeds prior to their disbursement at the closing.

As counsel for plaintiffs articulate, these arguments would have merit were it not for the distinction between "loan closing" and disbursement of loan proceeds. Indeed, the Georgia Good Funds Statute provides two definitions for both terms. Section (a)(5) of the Georgia Good Funds Statute states:

" 'Loan closing' means the time agreed upon by the borrower and the lender when the execution and delivery of the loan documents by the borrower occurs." See Ga. Code Ann. 44–14–13(a)(5).

Section (a)(3) states:

" 'Disbursement of settlement proceeds' means the payment of all proceeds of the transaction by the settlement agent to the persons entitled thereto." Ga.Code Ann.

44–14–13(a)(3). Loan closings can and do occur prior to disbursement of the loan proceeds. An example of this can be found in a consumer's right to rescind a non-purchase money mortgage loan transaction secured by a mortgage on the consumer's principal residence for a period of three business days after the closing. 12 CFR § 226.23(a) (2001). Another section of the same statute provides that the lender shall disburse no money until the rescission period, three days after the closing, has expired. Furthermore, this reading of the Georgia Good Funds Statute does not conflict with subsection (d) of the Statute or the HUD–1 Settlement Statement provisions. Even if the lender delivers the settlement funds at closing, the settlement agent can proceed with the closing and deposit the check after closing but prior to disbursing the funds. The court notes that the statute speaks of settlement proceeds, not uncertified checks, which are merely a promise to pay.

A close look at the plain meaning of the statute reflects that it speaks to the disbursement of settled proceeds pursuant to a deposit from the lender. It does not mention "the closing." The second exception to this rule requires that there is a deposit of a check or draft, and then indicates which persons would qualify for the exceptions in a case where a deposit is made. In this case, there was no deposit made prior to the disbursement of funds.

■ In the case at bar, DeFoor actually deposited the June 6th check on June 15, 2000, at least nine days after the loan closing, and disbursement took place. Had DeFoor deposited the check earlier, even before the closing, it is possible that the present controversy could have been avoided altogether. The Georgia Good Funds Statute, like the Good Funds statutes adopted in other states, places the burden of obtaining good funds and the risks associated with a failure to obtain these funds on the settlement agent, unless certain specific facts exist to exempt the transaction from this requirement. See *Guardian Title Agency, LLC v. Matrix Capital Bank*, 141 F.Supp.2d 1277, 1281 (D.Colo.2001) (The Colorado Good Funds Statute ensures that the party responsible for the real estate closing has the burden of ensuring that good funds are being disbursed). It is clear that DeFoor violated the Georgia Good Funds Statute by depositing the June 6th Check issued by National Settlement on behalf of Island on June 15, 2000.

The Court's holding today is specifically limited to the particular facts of this case; namely, that DeFoor waited nine days after the receipt of the June 6th Check and seven days after the Carruth–Koon loan closing and his disbursement of settlement funds, to deposit the June 6th Check. Whether DeFoor would have violated the Georgia Good Funds Statute had he deposited the June 6th Check only one or two days after he disbursed the funds at the closing, in light of the absence of any prior judicial interpretation of the Georgia Good Funds Statute, is a matter that this Court does not address today. This Court also refuses to speculate as to whether other factors not before this Court would have changed the outcome of this decision.

*Prudential as Party in Interest*

■ DeFoor claims that he owed no legal duty to Prudential under the Good Funds Statute because there was no attorney-client relationship between DeFoor and plaintiff that gave rise to a duty. See *Legacy Homes v. Cole*, 205 Ga.App. 34, 421 S.E.2d 127 (1992), *Huddleston v. State*, 259 Ga. 45, 376 S.E.2d 683 (1989). Defendant essentially invokes a rule of "no privity-no liability". However, DeFoor does not dispute that he delivered documents to Island Mortgage which certified that 1) the loan

had been closed, 2) the loan funds had been issued by National Settlement on behalf of Island Mortgage, 3) the loan funds had been disbursed to Borrowers, 4) that the loan was secured by a mortgage, 5) that a first and valid lien on the subject property had been executed. There is also no dispute that Prudential relied on these certifications in purchasing the loan package from Island Mortgage.

Before turning to relevant case law, a review of the Georgia Good Funds Statute is essential. Section (e) of the Georgia Good Funds Statute states that "Any party violating this Code section shall be liable to any other party suffering a loss due to such violation for such other party's actual damages plus reasonable attorney's fees." Section (a)(8) defines the term "party" or "parties" to mean the "seller, purchaser, borrower, lender and settlement agent, as applicable to the subject transaction." In this case, DeFoor acted as the settlement agent, the Carruths and Koon were the borrowers and Island Mortgage acted as the lender. Therefore, it is clear that DeFoor could be liable to the Borrowers under the terms of the Georgia Good Funds Statute as they qualify as "parties." Prudential, on the other hand, was not a borrower, lender, seller or purchaser of the Real Estate. It purchased the Carruth–Koon loan and was assigned the note and mortgage. As such, it stands in the shoes of Island Mortgage as holder of the mortgage and the note in question. Therefore, it would appear that Prudential is excluded from bringing an action against DeFoor under the Georgia Good Funds Statute. However, the Georgia Good Funds Statute may be interpreted to include a party such as Prudential under certain circumstances, pursuant to Georgia case law.

Recent case law in Georgia has established that where a settlement agent knows that an assignment of a loan package is to follow a loan closing, the settlement agent will be held liable for any damages proximately resulting from any negligence in connection with their work relating to the closing. *See First Financial Savings & Loan Association v. Title Insurance Company of Minnesota,* 557 F.Supp. 654, 660 (N.D.Ga.1982). This liability will attach even for certifications not made directly to the third party. In *First Financial,* two closing agent attorneys were alleged to have been negligent in conducting real estate loan closings because they certified that the loans had been closed, loans were secured by deeds, and that the loan funds advanced by the lender ("Heritage") had been properly disbursed and a first and valid lien on the property had been created, when in fact these certifications were not true at the time they were made and did not subsequently become true. *Id.* At 659. In fact, after sending the loan package to the lender, the lender sold the loans to a third party, First Financial, yet the drafts advanced by the lender were dishonored when presented to the banks by the closing attorneys. The Court held that the closing attorneys, although they did not deal directly with First Financial, were nonetheless liable for negligence in conducting the closing if they knew that the loans would be assigned to another party at the time of the closing. Furthermore, there was no requirement that the closing attorneys know the specific identities of the assignees of the loan packages. *Id.* The rationale for extending the right to recover to those not in privity with the defendant is that the third party "is in a limited class of persons known to be relying upon [the] representations..." *Id.* (quoting *Travelers Indemnity Co. v. A.M. Pullen & Co.,* 161 Ga.App. 784, 786–787, 289 S.E.2d 792 (1982)).

Based on the case law above, the Court would be inclined to find that the Georgia Good Funds Statute applies to Prudential if DeFoor had knowledge as of the closing date that the Carruth–Koon loan was to be sold to a third party. In the case at bar, it is not clear whether DeFoor knew that the loan package would be assigned to a third party. As a result, although DeFoor violated the Georgia Good Funds Statute, he may not be liable to Prudential for the negligence resulting from his conduct in connection with the closing unless it can be shown that he knew that the Carruth–Koon loan package was to be assigned to a third party. A subsequent hearing shall be scheduled for this issue.

*Exceptions to Compliance with Georgia Good Funds Statute*

Prudential's motion for partial summary judgment asserts a second, additional basis for violation of the Georgia Good Funds Statute. Subsections (c)(2) and (c)(3) of the statute permit a settlement agent to disburse uncollected funds if the deposit is a check issued by a lender approved by HUD or a lender qualified to do business in Georgia, respectively. See Ga.Code Ann. 44–14–13(c). Prudential argues that even if the statute does not require the settlement agent to deposit the settlement funds prior to their disbursement, DeFoor violated the statute because the entity who "issued" the checks, National Settlement, is neither a HUD-approved lender nor qualified to do business in Georgia. DeFoor counters this argument and asserts that although National Settlement issued the checks, National Settlement and Island are the same entity for purposes of the Good Funds Statute, and that Island Mortgage was the true lender and National Settlement only functioned as a conduit to disburse the loan funds to DeFoor. There was no evidence to support a finding of fact by this Court as to the exact relationship between Island Mortgage and National-

al settlement as represented by DeFoor, and therefore, the Court will not decide that issue without a fact finding hearing.

As this Court interprets the Georgia Good Funds Statute, in order for the settlement agent to possibly benefit from the limited circumstances in which he can disburse uncollected funds, the exceptions to the rule, he must first deposit the check received prior to their disbursement before the exception can be addressed.

As a result, this Court does not need to reach arguments advanced by both sides on whether subsections (c)(2) and (c)(3) of the Georgia Good Funds Statute apply under the facts of this case, as it is clear that DeFoor violated the Georgia Good Funds Statute. The issue of whether Prudential is entitled to obtain damages against DeFoor under the Georgia Good Funds Statute shall be addressed at a further hearing.

### CONCLUSION

1. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is not a core proceeding but is otherwise related to the Debtors' substantively consolidated case.

2. Prudential motion for partial summary judgment is granted in part. DeFoor's deposit of the June 6th Check nine days after receipt and seven days after the Carruth–Koon closing and disbursement of funds constitutes a violation of the Georgia Good Funds Statute.

3. The Court does not reach the issue of whether the issuance of the June 6th Check by National Settlement falls within any of the exceptions to the requirement that good funds be disbursed at the real estate closing because the Georgia Good Funds Statute requires that the funds in question be deposited *prior* to disburse-

ment of funds before any such exception could apply.

4. Prudential may be permitted to seek damages against DeFoor for his failure to comply with the Georgia Good Funds Statute if sufficient evidence exists that DeFoor knew that the Carruth–Koon loan package was to be assigned to any third party.

5. A factual hearing will be held on November 25, 2002 at 10:00 a.m. to determine if Prudential has standing to pursue this cause of action on its own behalf and thereafter to determine the rights of either party to the cross motion to dismiss.