**FOURTH DIVISION**
**DILLARD, P. J., RICKMAN**
**and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timelyfiled.
http://www.gaappeals.us/rules

**September 28, 2020**

# In the Court of Appeals of Georgia

## A20A1263.VILLASONOMAPERIMETERSUMMIT RI-043 CONDOMINIUM ASSOCIATION, INC. v. MAINOR.

RICKMAN, Judge.

Following two separate water leaks in his condominium unit, Jesse F. Mainor filed suit against the Villa Sonoma Perimeter Summit Condominium Association ("the association") for breach of contract and attorney fees.[1] The trial court granted Mainor's motion for summary judgment and the association appeals. On appeal, the association contends that the trial court erred by holding that the Georgia CondominiumAct("the Act"), OCGA §44-3-70etseq., requiredthatthe association maintain coverage for damage caused by water leaks. For the following reasons, we reverse and remand.

---

[1] The suit was originally filed by Carolina Gomez Mainor, Jesse F. Mainor's wife. Jesse F. Mainor was later substituted as party plaintiff by consent.

Mainor was the owner of a condominium unit located in Villa Sonoma at Perimeter Summit. In January 2018, his condominium unit sustained damages as a result of water leaking from a hot water heater tank inside another unit. Mainor's unit "sustained . . . damages, including costs incurred to repair and replace the water damage to the unit's dining room ceiling and floor; living room and kitchen walls; living room ceiling and floors; and kitchen ceiling and floors." The alleged damages for the January 2018 water leak were in excess of $10,000. Approximately one month later, Mainor sustained another water leak causing another $4,480.60 in damage.

The association held an insurance policy that provided certain coverage for water leaks and water damage, however, the relevant insurer denied coverage for the water losses at issue. The reason for the denial is not a subject of this appeal. That policy had a $10,000 deductible, which would apply separately to each water leak.

After Mainor filed suit, the parties filed cross-motions for summary judgment. The trial court granted Mainor's motion and denied the association's motion, holding that the term "fire and extended coverage" in the Act included coverage for damage

caused by water. Accordingly, the trial court held that the association breached its duty under the Act by obtaining a policy that provided coverage for water damage, but with an impermissibly high deductible. If the association was required to have coverage for water leaks pursuant to the Act then, at most, under OCGA § 44-3-94 the deductible allocated per casualty loss could not exceed $5,000. The trial court further held that, based on the terms of the declaration, the association could only assess Mainer up to $1,000 for the deductible for the water damage at issue.

On appeal, the association contends that the trial court erred by holding that the Act required the association to maintain coverage for water leaks. We agree.

"As in all appeals involving the construction of statutes, our review is conducted under a de novo standard." (Citation and punctuation omitted.) *Bowen v. Savoy* __ Ga. ___ (839 SE2d 546) (2020).

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). "To that end, we must afford the statutory text its "plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English

3

language would." (Citations and punctuation omitted.) Id. at 172-173 (1) (a). "In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter." OCGA § 1-3-1 (b).

The Act provides that "[t]he association shall obtain . . . [a] property insurance policy or policies affording *fire and extended coverage insurance* for and in an amount consonant with the full insurable replacement cost, less deductibles, of all buildings and structures within the  condominium."  OCGA  § 44-3-107 (a)  (1) (emphasis supplied). The threshold issue in this case was whether the term "fire and extended coverage" included coverage for water leaks.

The association argues that "fire and extended coverage" has a specific, well-established meaning in the insurance context that does not include coverage for water leaks. We agree. See generally *Holmes v. Chatham Area Transit Auth.*, 234 Ga. App. 42, 44 (505 SE2d 225) (1998) (holding that the phrase "instrumentality of the state" was "not subject to simple definition"); *Shoffner v. Woodward*, 195 Ga. App. 778, 779-780 (1) (a) (394 SE2d 921) (1990) (holding that the term "recapitalization" was a term used in a particular trade or business).

4

Although not expressly defined in the statute, "extended coverage" in the context of a fire insurance policy is a phrase connected with the insurance trade. "Georgia, like all other states, prescribes a standard form of fire insurance, modeled on the New York statute." Fire and windstorm insurance, 3 Ga. Real Estate Law & Procedure § 26:192 (7th ed.). "There are also forms for what is called "extended coverage," dealing with windstorm, hail, aircraft, riot, vehicles, explosion, and smoke." Id.Likewise, the Georgia Office of Insurance and Fire Safety Commissioner defines extended coverage in the context of a fire policy as, "Coverages: Fire - - Extended Coverage: [a]n extension of the fire policy to cover the additional perils of windstorm, hail, explosion, or riot, attending a strike, civil commotion, aircraft, vehicle and smoke."

https://www.oci.ga.gov/ConsumerService/InsuranceGlossary.aspx.

While not controlling, we also find instructive Georgia cases where "fire and extended coverage" has been defined in specific insurance policies. See *Stephens v. Cotton States Mut. Ins. Co.*, 104 Ga. App. 431, 431 (121 SE2d 838) (1961) (In the context of a fire insurance policy, "extended coverage" insured property against "direct loss by windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, and smoke.") See generally *General Ins. Co. of*

5

*America v. Davis*, 115 Ga. App. 804, 812 (156 SE2d 112) (1967) (finding no competent evidence that plaintiff's damage was due to windstorm and thus, it was not recoverable under plaintiff's extended coverage policy which covered loss by windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, and smoke); *Sun Ins. Office Ltd. v. Guest Camera Store*, 108 Ga. App. 339, 342-343 (2) (132 SE2d 851) (1963) (affirming the trial court's finding that the plaintiff's damage due to windstorm was recoverable under an extended coverage policy providing coverage for a direct loss by windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, and smoke).

Accordingly, while the association did have a policy providing coverage for water damage, it was not required to by the Act.[2] Because the trial court erred in its conclusion on the threshold issue in this case, we reverse and remand this case for

---

[2] We note the recently passed legislation to amend OCGA § 44-3-107 to add new subsection (c). See 2020 Georgia House Bill No. 1070, amendment to OCGA § 44-3-107, effective January 1, 2021. Amended OCGA § 44-3-107 (c) provides guidance for associations and unit owners on how to proceed "[i]n the event of a potential or submitted claim related to water damage or water peril on any insurance policy." Id. Notably, it expressly states that "[n]othing contained in this subsection shall require an association to obtain insurance related to water damage or water perils." Id.

the trial court to reconsider both parties' motions for summary judgment in light of our determination that the association was not required under the Act to maintain coverage for the water leak at issue.

*Judgment reversed and remanded. Dillard, P. J., and Brown, J., concur*.